INLAND NAV. CO. et al. v. UNITED STATES et al.

Civ. No. 527.

District Court, E. D. Washington, N. D.

March 8, 1948.

John M. Hickson, of Portland, Or., and Howard Dent, Jr., of Dalles, Or., for plaintiffs.

Edward Dumbauld and David O. Mathews, Sp. Assts. to the Atty. Gen., Wendell Berge, Asst. to the Atty. Gen., and Harvey Erickson, U. S. Atty., of Spokane, Wash., for defendant.

Daniel W. Knowlton, Chief Counsel, and Nelson Thomas, both of Washington, D. C., for Interstate Commerce Commission.

Thomas J. White, of Portland, Or., and Johnston B. Campbell, of Spokane, Wash., for intervenor-defendant, Tidewater-Shaver Barge Lines.

Before BONE, Circuit Judge, and DRIVER and BLACK, District Judges.

DRIVER, District Judge.

This action, based upon the jurisdictional provisions of 28 U.S.C.A. §§ 41(28) and 46–48, is brought to set aside and annul certain orders of the Interstate Commerce Commission, granting Tidewater Transportation Company, of Spokane, Washington, (hereinafter referred to as Tidewater) a certificate of public convenience and necessity as a common carrier by water under the so-called "grandfather" clause, Sec. 309(a) of part III of the Interstate Commerce Act, 54 Stat. 929, 941, 49 U.S.C.A. § 909(a).

Briefly summarized, the history of the proceedings, which culminated in the Commission's order is as follows:

On May 26, 1941, Tidewater filed with the Commission an application for a certificate under the "grandfather" clause to transport general commodities by non-self-propelled vessels with the use of separate towing vessels between Portland, Oregon, and Attalia, Washington, on the upper Columbia River, and to serve certain intermediate points. On May 28, 1943, the application was amended, by letter, to include authority to perform general towage between the points designated. On July 23, 1943, without formal hearing, division 4 of the Commission granted the application and issued to Tidewater a certificate of convenience and necessity (260 I.C.C. 30), authorizing the transportation of general commodities and general towage in interstate commerce between all points on the Willamette and Columbia Rivers, between Portland, Oregon, and Pasco and Kennewick, Washington (Pasco and Kennewick are at the head of navigation on the Upper Columbia River, about ten miles above Attalia.) The certificate became effective October 14, 1943. Several competing water carriers filed exceptions with the Commission, and when a hearing was denied, commenced an action in this Court to set aside the Commission's certificate. The proceedings were then opened for reconsideration, and the action in this Court was dismissed.

Hearings were had before Commission Examiners, at Spokane, Washington, on September 29, 1944, and at Portland, Oregon, on November 27, 1944. Tidewater and the protestants appeared at both hearings, and oral testimony was taken and a

number of exhibits received. On February 6, 1945, the entire Commission, by its report on Hearing and Reconsideration (260 I.C.C. 510), affirmed the order of its division 4 and directed that the certificate, previously issued to Tidewater, be permitted to stand. The protesting carriers instituted the present action in this Court, and the Interstate Commerce Commission and Tidewater-Shaver Barge Lines, a corporation, successor in interest to Tidewater, intervened. A transcript of the testimony, together with the exhibits received in the two hearings before the Commission examiners, have been submitted to this Court as the evidence upon which the issues are to be determined.

■ In a case such as this, involving the validity of an order of the Interstate Commerce Commission, the function of a reviewing Court is strictly limited. The Court may not properly weigh the evidence or substitute its judgment for the Commission's conclusions. If there has been a fair hearing, if the Commission has acted within the scope of its constitutional and statutory authority in a case where such authority has been competently invoked, and has not been arbitrary or capricious, and if the findings are supported by substantial evidence, then the Commission's order is judicially incontestable and must stand. Rochester Telephone Corporation v. United States, 307 U.S. 125, 139, 140, 59 S.Ct., 754, 83 L.Ed. 1147; United States v. Chicago Heights Trucking Co., 310 U.S. 344, 352, 60 S.Ct. 931, 84 L.Ed. 1243; Board of Trade of Kansas City v. United States, 314 U.S. 534, 546, 62 S.Ct. 366, 86 L.Ed. 432; Federal Power Commission v. Natural Gas Pipeline Co., 315 U.S. 575, 586, 62 S.Ct. 736, 86 L.Ed. 1037; Swift & Co. v. United States, 316 U.S. 216, 231, 62 S.Ct. 948, 86 L.Ed. 1391; Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 512, 522, 64 S.Ct. 1129, 88 L.Ed. 1420.

The reasons advanced by the plaintiffs for setting aside the Commission's orders, as stated in their opening brief, for the most part, are concerned with the sufficiency of the Commission's findings. It is contended that the Commission has failed to make basic essential findings sufficient to support its action, that the findings are not supported by the evidence, and are contrary to law, and that the findings are so vague and ambiguous that it is impossible to determine the basis or reason for the Commission's conclusions.

The Commission's findings, embodied in its report on reconsideration (260 I.C.C. 510), are as follows:

"In order to properly evaluate applicant's past service, it is necessary first to consider the history and nature of navigation on the waterway here in question. Prior to 1936, little or no commercial navigation was performed on the Columbia River above The Dalles, Oregon, a point about 60 or 70 miles above Vancouver, Washington. Navigation on the Columbia River above The Dalles is hazardous and difficult, the river being swift and treacherous and containing many rapids and other navigation hazards. Furthermore, the river runs through a sparsely populated country and few points have any facilities for shipping by water, so that only a very limited amount of traffic is available for movement.

"On or about 1936, Kirk Thompson, an individual who is now general manager, treasurer, and director of the applicant corporation, investigated the feasibility of performing a water-carrier service in this area, and during that year, he commenced operation with one towboat and one barge and transported a bargeload of gasoline from Portland to Attalia, Washington, the latter point being approximately 10 miles below the confluence of the Columbia and Snake Rivers. Having been convinced of the feasibility of performing a profitable service in this area, he induced others to join with him, and in 1937, the business was incorporated and additional equipment secured. On January 1, 1940, three towboats, six tank barges, and two dry-cargo barges were in service. Since that time, one towboat has been destroyed by fire, but two others have been added.

"Applicant's principal service has consisted of transportation of bulk petroleum products and bulk wheat, which transportation is exempted from the provision of part III of the Interstate Commerce Act by section 303(b) or 303(d) [49 U.S.C.A.

§ 903(b, d)]. Applicant, however, has not and does not confine itself to this type of traffic. It uses its equipment to the extent of its capacity in any water carrier service requested, but, owing to the limited offerings on this waterway, only a small amount of other traffic has been handled. Other commodities handled prior to January 1, 1940, were: wheat, in sacks; a water tank; a radio post; wire rope; steel; service station tanks, hoists and pumps; boxes of switches and a motor; and groceries. Some of the foregoing transportation was performed by applicant for its own account or for or in conjunction with other water carriers, but this service, nevertheless, evidences applicant's ability and holding out to perform any water carrier service requested. The same type of service has been continued since January 1, 1940. In addition to its carrying of commodities, applicant on many occasions has used its towing vessels to aid other water carriers in retrieving their equipment from shoals and rocks and to aid Government engineers, engaged in improving the channel of the waterway. Most of these services were performed without charge, it being a reciprocal practice of the carriers on this waterway to help each other, and insofar as work was performed for Government engineers, applicant considers it was compensated by channel improvements made by them. Some towing of dredges and barges with rock has been performed for a construction company, and considerable towing of barges for other water carriers has been done. Considering the limited possibilities for performing transportation on this waterway, the record is convincing that the actual operations of applicant were consistent with its alleged holding out to perform a general barging and towing service. Under such circumstances, the fact that applicant has not performed a wide variety of nonexempt service should not be construed as a proper basis for modifying the authority previously authorized by division 4 so that applicant would not be able to handle other traffic which might develop in the future. We conclude that applicant was on January 1, 1940, and since that time has been, engaged in operation as a common carrier by non-self-propelled vessels with the use of separate towing vessels in the transportation of general commodities, and by towing vessels in the performance of general towage."

■■ The Commission is not required to make formal or detailed findings of fact. The Interstate Commerce Act provides that the Commission shall make a report in writing, which shall state its "conclusions" and "its decision, order, or requirement in the premises." The Act does not direct that findings of fact be made except where damages are awarded 49 U.S.C.A. § 14(1). All that is required of the Commission in a case such as the present one, where damages are not involved, is that its report, in writing, contain a statement of quasi-jurisdictional or basic findings, sufficient to enable a reviewing Court to determine whether the statutory standards, prescribed by Congress, and essential to the validity of the Commission's order, have been applied. United States v. Baltimore & Ohio Railroad Co., 293 U.S. 454, 463, 464, 465, 55 S.Ct. 268, 79 L.Ed. 587; United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 488, 489, 62 S.Ct. 722, 86 L.Ed. 971.

■ The question before the Commission for determination was whether the applicant was entitled to a certificate of convenience and necessity, under the pertinent "grandfather" clause of the Interstate Commerce Act. The requirements of the clause are that the applicant carrier "was in bona fide operation as a common carrier by water on January 1, 1940, over the route or routes or between the ports with respect to which application is made and has so operated since that time * * *." 49 U.S.C.A. § 909(a). The act defines a "common carrier by water" as "any person which holds itself out to the general public to engage in the transportation by water in interstate or foreign commerce of passengers or property or any class or classes thereof for compensation * * *." 49 U.S.C.A. § 902(d).

It clearly appears from the report on reconsideration that the foregoing statutory standards were applied. The Commission concluded that, although for the most part the applicant had transported commodities, exempt from regulation under the act, it had held itself out to carry all commodities offered and had transported a sufficient

572

amount and variety of non-exempt articles to show good faith operation as a common carrier by water on January 1, 1940, and a continuance of the same type of service since that time. We think that the limited requirements as to findings of fact have been met and that the Commission's statement of its conclusions, quoted above, is neither fatally vague and indefinite nor lacking in basic findings essential to the exercise of its statutory authority.

Plaintiffs contend that the Commission's findings are not supported by the record in that the evidence does not show a bona fide and continuous operation by the applicant on and after January 1, 1940. They earnestly urge that Tidewater's transportation was virtually limited to commodities, exempted from regulation by the provisions of the Interstate Commerce Act, (see 49 U. S.C.A. § 903), since its carriage of non-exempt commodities was so limited and sporadic as to be wholly inconsequential; and that the failure of the applicant to offer proof of any non-exempt carriage of commodities subsequent to August 1, 1940, leaves the finding of the bona fides of the applicant's operation without factual support. The applicant's showing as to general towage, plaintiffs maintain, is "almost as weak" as the evidence in support of general commodity carriage. They call attention to the fact that the major portion of the applicant's towage was for other carriers, or performed without compensation, or in the course of salvage operations, all of which was exempt, and that there is no record proof of any non-exempt towing service performed during the years, 1942 and 1943.

The requirements of the "grandfather" clause that the carrier must be in "bona fide operation" on the crucial date and continue to "so operate since that time" goes beyond a mere holding out to serve the public as a common carrier, coupled with ability to render such service. There must be "actual rather than potential or simulated service," (McDonald v. Thompson, 305 U.S. 263, 266, 59 S.Ct. 176, 178, 83 L.Ed. 164) and the service rendered must have been substantial in character "as distinguished from incidental, sporadic, or infrequent." United States v. Carolina

Freight Carriers Corp., supra, 315 U.S. 475, 480, 481, 62 S.Ct. 722, 726, 86 L.Ed. 971.

However, in water carrier applications, the foregoing rules have been applied with special liberality by the Commission, for the reasons stated in the following quotation from its report in Moran Towing Company Application, 260 I.C.C. 269: "In our administration of the act we have adopted a liberal attitude with respect to the granting of operating authorities to water carriers holding their services out to the general public, because the general characteristics of water carriers are such that ordinarily they do not handle as wide a variety of commodities or serve as many points as the rail or motor carriers. Furthermore, it is well known that the exemption provisions of the act exempt most of the transportation of water carriers other than the so-called package-freight carriers. A person engaged only in towage is limited further by the fact that, except as to floating objects, the shipper must furnish the vessel upon which its property is to be loaded, and by the fact that towage performed for other water carriers subject to the act is not subject to the act except as a part of the operations of such other carriers."

Moreover, in water carrier applications involving "grandfather" rights, it has been the policy of the Commission to give consideration to both exempt and non-exempt transportation of the applicant during the critical period. Russel Brothers Towing Co., Inc., Common Carrier Application, 250 I.C.C. 429; Central Barge Co. Application, 260 I.C.C. 329, 335; Ohio River Company Contract Carrier Application, 260 I.C.C. 501, 508. This policy has been applied where "grandfather" rights of a water carrier to perform general towage are involved. Colle Towing Company Application, 260 I. C.C. 681. In Russel Brothers, supra, p. 433, the Commission said:

"A common carrier by water is defined in part III of the act as 'any person which holds itself out to the general public to engage in the transportation by water in interstate or foreign commerce of passengers or property or any class or classes thereof for compensation. * * *' Under the 'grandfather' clause, an applicant for a cer-

tificate must show that it 'was in bona fide operation as a common carrier by water on January 1, 1940, over the route or routes or between the ports with respect to which application is made and has so operated since that time. * * *'

"It will be noted that in neither instance is there any reference to whether the transportation performed by the carrier is or is not subject to regulation. In determining a carrier's status and the scope of its operation during the 'grandfather' period, its entire operations should be considered, and not merely that part which the Congress has seen fit to make subject to regulation. To find that 'grandfather' rights may be granted only to the extent that a showing is made as to the performance of regulated transportation requires the reading into the law of language which, in fact, is not there.

"This matter is particularly important in instances like the present where an applicant is seeking a certificate covering all commodities, or general cargo. Obviously no carrier actually transports all commodities, and therefore the bona fides of an applicant's operations depend on the representative character of the transportation performed. It may well be that the carrier holds itself out to, and actually does, transport all traffic offered to it from and to all points covered by its application but that the great bulk of such transportation is exempt from regulation. It seems clear that if we shut our eyes to all of applicant's transportation except that which is subject to regulation, we get an incomplete and distorted picture of the nature and extent of its operations. To place limitations upon 'grandfather' rights predicated upon that view would be unjust and unreasonable, and is not contemplated by the law."

The foregoing administrative policy of the Commission was approved in Barrett Line v. United States, 326 U.S. 179, 192, 65 S.Ct. 1504, 89 L.Ed. 2128.

In the instant case, the Commission was dealing with an applicant, who had pioneered water transportation on the upper Columbia River, a difficult and hazardous waterway, obstructed by numerous rapids. It extends through a sparsely settled territory, where there are few landing facilities, and where a very limited variety and small volume of general commodities are offered for water carriage. The record shows that during the year, 1937, ninety-one per cent of all the tonnage was carried by the applicant through the Celilo Locks, just east of The Dalles, Oregon, (the only gateway to the upper Columbia River) ; in 1939 seventy-eight per cent was carried by applicant; and in 1942, forty-nine per cent. The evidence amply justifies the Commission's finding that the "offerings on this waterway" were "limited." There is also testimony in the record to the effect that after the onset of the "War Emergency", the volume of non-exempt, general commodities offered declined still further; that thereafter, none were offered to the applicant, and very little, if any, were transported by other water carriers. The act excuses applicant carrier for "interruptions of service over which the applicant or its predecessor in interest had no control." 49 U.S.C.A. § 909(a).

 The record sufficiently supports the Commission's factual summary, quoted above from its report, as to the commodities carried and the towage service rendered by Tidewater during the crucial period. There is also substantial evidence to support the finding that the applicant held itself out to transport general, non-exempt commodities and do general towage. In the light of all the attendant circumstances, the nature of the waterway involved, the kind and volume of traffic available, and the transportation service, both exempt and non-exempt, performed by Tidewater, the question whether applicant has shown substantiability of performance of its holding out as a common carrier and the requisite bona fides of its operations is for the Commission to determine in the exercise of its expert judgment. The Courts will not interfere with such a determination in the absence of patent error, and there is none here. United States v. Carolina Freight Carriers Corp., supra, 315 U.S. 475, 482, 62 S.Ct. 722, 86 L.Ed. 971.

 Plaintiffs object to the Commission's order for the reason that it grants to the applicant the right to operate between Portland and Kennewick and Pasco, al-

though the application extended only to Attalia. The Commission is not required to follow strict rules of pleading. The hearing before the examiners at Spokane and at Portland were held after division 4 of the Commission had granted a "grandfather" certificate to the applicant to Kennewick and Pasco, and it was well known to all concerned that the applicant's right to operate to those points was in issue. The plaintiffs could not have been mislead because of variance with the application. In a case involving "grandfather" rights, where a fair hearing has been afforded, the Commission has the power to authorize service territorially broader than the carrier has requested. Chicago, St. P., M. & O. Ry. Co. v. United States, 322 U.S. 1, 3, 4, 64 S.Ct. 842, 88 L.Ed. 1093.

Plaintiffs further contend, however, that the Commission was without authority to grant carrier rights to Kennewick and Pasco because the applicant admittedly had never performed service to those points. With respect to that phase of the case, the Commission, in its report on reconsideration (260 I.C.C. 510, 512, 513) said: "With respect to the territorial scope of authority authorized by division 4, the record discloses that the applicant has served Portland and Vancouver, on the west, and Attalia on the east and intermediate points, on many occasions both prior to and since January 1, 1940. No service was performed prior to January 1, 1940, as far inland as Pasco and Kennewick. These points, however, are located just above the confluence of the Columbia and Snake Rivers and are considered as the head of navigation on the Columbia River system. They are located only a few miles above Attalia. During 1940, applicant made an experimental trip up the Columbia and Snake Rivers to Lewiston, Idaho. It also served Ainsworth, Washington, a point only 1½ miles below Pasco and Kennewick, on one occasion during 1940."

The administrative policy of the Commission with reference to the territorial scope of "grandfather" rights is stated in Nicholson Transit Company Contract Carrier application, 260 I.C.C. 301, 302, as follows:

"In determining 'grandfather' rights under part III of the Interstate Commerce Act, it has been the policy of the Commission not to restrict a carrier which has been performing a general service within a given area to the particular ports and points to and from which transportation was actually performed. Consideration also has been given to the scope of the operation in which the applicant line was organized to engage, the extent to which it held itself out to transport traffic within such territory, and its ability to perform such transportation upon demand."

Moreover, in the present case, the applicant could not reasonably have been required to show service to Kennewick and Pasco on January 1, 1940, the "grandfather" clause date, as the upper Columbia River was not open to traffic to those points until the year, 1941. See Inland Navigation Co. Contract Carrier Application, 250 I.C.C. 703. We think that the Commission had authority to grant operating rights to Kennewick and Pasco.

Finally, the plaintiffs contend that the Commission erred in affirming the order of division 4 for the reason that such order "was void because granted without either hearing or evidence." The contention is without merit. The governing statute, 49 U.S.C.A. § 909(a) does not require a formal hearing or the taking of evidence in the first instance on a "grandfather" application, and the order of division 4, based upon an investigation made by the Commission, was not void. When competing carriers protested, the Commission, on reconsideration, granted full and fair hearings, at which plaintiffs appeared by counsel, testimony was taken, and exhibits were received. As a result of such hearings, the Commission concluded that the applicant, Tidewater, was entitled to "grandfather" rights. We see no reason why it could not properly affirm the prior order and sustain the certificate previously issued by its division 4.

We find no ground for annuling the Commission's orders. The complaint will be dismissed.